Yan Yorst, J.
The defendant has adopted as a wrapper for his preparation, paper in color similar to that used by the plaintiff for his article. That portion of the wrapper which covers the face of bottle is enclosed in a red border, with a peculiar configuration on its inner edge, and tracery on the surface, similar *266 in all respects to the plaintiff’s wrapper. The defendant has also adopted the circle, which is used by ■ the plaintiff, and which is the conspicuous symbol within the upper part of the border. The printing on the front of the defendant’s wrapper, designating the persons by whom his article may be used, and the object upon which it is to be applied, is the same as is to be found on the plaintiff’s label, and arranged within the same space, and made in the same colored ink. The general effect of the two labels produced on the eye when presented at a short distance, is about the same. A close examination, however, discloses distinct differences.
But the defendant, by the adoption of a label similar in color, size, border, ornamentation, circular symbol, and red colored ink, has so closely imitated the plaintiff’s wrapper, that the careless, or unobservant purchaser may be readily misled. A crafty vendor might readily palm off on an inattentive buyer the defendant’s for the plaintiff’s article.
The evidence shows that persons dealing in the article for sale have been themselves innocently misled. The plaintiff adopted his label in 1869. He is a large manufacturer of the article contained in bottles .enclosed within his wrapper. The article is well known as a preparation for shoe and leather dressing, is largely in use, and its sale increasing. .
The defendant’s preparation is for the same purpose, and put up in bottles of the same size as plaintiff’ s. In 1873, he changed his label, and adopted the one in question, which, in the particulars above men-' tioned, is an imitation of the plaintiff’s wrapper.
A simple inspection and comparison instantly discloses the points of close resemblance. It cannot but be that the designer who prepared' the model or die for the defendant’s label, had before him as a pattern the plaintiff’s label. In no other manner could the *267 similitude have been so accurately produced. One of the plaintiff’s witnesses, a dealer in a similar article, testifies that in a conversation between the defendant and himself, he charged the defendant in substance, with having imitated the plaintiff’s label, which defendant does not appear to have denied. And that, influenced by the defendant’s success, he himself made a similar imitation, and under the new label, the sale of his article was increased. But that he discontinued the use of such label when he learned from others that the plaintiff complained of his conduct. The defendant would have done well, when notified, to have followed the example of the witness. The defendant makes no explanation of the similarity between his and the plaintiff’s label, and assigns no reason therefor. He produces no evidence on the trial. The plaintiff having, by a combination of elements and symbols, produced a wrapper to enclose and designate his article, under which it has gone into use, and is known, should not be interfered with, or despoiled of his lawful business and gains by the imitation of his label by another; who seeks by such imitation to. introduce á similar article. Such practices are deceptive, and have their-origin in,' and promote dishonorable competition.
The plaintiff’s article is largely used in families, is purchased by the old as well as the young. Persons of the former class, by dimness of sight, and thosé of the, latter, through ignorance or-inexperience, are likely to be deceived.
The conduct.of the defendant, by his imitation of the plaintiff’s label, leads to this result, and purchasers have been deceived. The defendant was under no restraint to adopt a label or trade mark in imitation of the plaintiff’s wrapper. The variety of form, design, color, figure, or symbol is endless. And if his article be meritorious, although it may be more expeditious to success to sail under the plaintiff’s colors, yet, in the- *268 end it would be safer and more profitable to adopt his own distinctive marks and symbols.
An inspection of the labels used by the defendant,, before the adoption of the one complained of, shows a gradual but designed approach to the plaintiff’s wrapper, until it has reached the condition of exactness, in the particulars above specified, in the wrapper now in use by him.
It is no answer, that in certain particulars, defendant’s label differs from the plaintiff’s, as long as the imitation in other respects is so apparent, that purchasers have been and are likely to be deceived. Many cases in regard to the law of trademarks have been cited by the counsel on both sides, which have been ■ considered. It is difficult to lay down any general rule by which every case shall be certainly well decided.
The propriety of a decision, in any case, depends • upon its peculiar facts.
But wherever there has been a clear imitation of the trademark, or label of any one, by which he is injured, and the public deceived, equity will give relief. The case of Cook v. Starkweather, 18 Abb. Pr. N. Y. 400, is a case in point. While there was a clear difference in some particulars, the imitation in other respects was close, and the defendant was restrained. Under the laws of Hew York, the counterfeiting or imitation of the stamp, wrapper, or label of a mechanic or merchant is made punishable by fine and imprisonment (Stat. at L. vol. 3, p. 663, 673); and the offending party is also liable to a civil action (vol. 6, p. 90)
There should be judgment for the plaintiff.